No. 898

First Circuit

HARMON v. DUFILHO

(February 8, 1932.   Opinion and Decree.)
(March 8, 1932.   Rehearing Refused.)

Lewis & Lewis, of Opelousas, attorneys for plaintiff, appellant.

A. V. Pavy, of Opelousas, attorney for defendant, appellee.

ELLIOTT, J.   This suit was brought by Edward E. Harmon against Roger Dufilho as an action of boundary for the alleged purpose of establishing the boundaries between the tract of land belonging to said Harmon, "containing 70 arpents situated on Church Prairie in the parish of St. Landry—bounded north by lands occupied by Frederick Hollier and Clement Hollier, south by lands of Richard Keough, west by Charles Hollier and on the east by lands of vendor," acquired by said Harmon from Solomon B. Harmon in March, 1885.

And the tract containing 7½ arpents belonging to said Dufilho, in the same parish, bounded north by Mrs. Faustin Hollier, east by vendor, south by Myers, and west by public road, acquired by Charles F. Hollier from Solomon B. Harmon in July, 1880.

Plaintiff's land is contiguous to, and bounded on the west by, that of the defendant.   The plaintiff alleges that the boundary limits between them has never been fixed, determined, or established; that there are no monuments, no visible signs of separation between their estates, etc. He maintains in his petition that a certain drainage canal recently excavated is not the boundary line between them, as claimed by the defendant, but is wholly and entirely on the land of the petitioner.   The court was prayed to appoint a surveyor to make a boundary survey between them. M. J. Godeau, Jr., was appointed for the purpose.   He made a survey and return, but did not establish any line.

Defendant appeared, and urged that the plaintiff's petition disclosed no cause or right of action, urging at the same time that an existing visible line existed between their respective estates, and that he had possessed as owner up to this line for more than 30 years.   These exceptions were by the court referred to the merits,

upon which the defendant answered, admitting that plaintiff was the owner of the tract containing 70 arpents, more or less, and that he owned the adjoining tract containing 7½ arpents, but alleged that the dividing line between them had been fixed and established by a survey made according to their respective titles more than 30 years ago, and pleaded the prescription of 10 and 20 years, in bar of plaintiff's action. He alleges that the dividing line between them has been represented by an actual existing standing fence erected more than 40 years ago, and that he and his authors have possessed the land up to the fence and according thereto in the presence of the plaintiff and authors for more than 30 years; that the correct line between the plaintiff and the defendant is the east bank of the drainage ditch referred to in plaintiff's petition. He denies that it is necessary to fix any boundary line between them, for the reason stated.

The lower court rendered judgment rejecting plaintiff's demand.

The plaintiff has appealed. The plaintiff takes the position in argument that the action is one in boundary and as to which there is no prescription, while the defendant contends that the boundary limits between their respective estates was established by a survey made for that purpose according to their respective titles more than 30 years ago; that the line then established is correct; but, if not so, then any action to rectify the error, if error exists, is barred by the prescription of 10 and 20 years.

He contends that plaintiff's action is substantially a petitory action, the purpose of which is to recover a certain parcel of land on defendant's side of the boundary line which defendant has acquired by the prescription of 30 years.

The judgment of the lower court dismissing plaintiff's suit has the effect of sustaining defendant's contention that the action is petitory and that the defendant is the owner of the land by the prescription urged in behalf of his ownership.

There is much conflicting evidence as to whether or not a certain fence has been moved, but to our mind there is no conflict as to the facts which we find should govern in the decision of the case.

The titles of the parties show that the plaintiff's tract of land containing 70 arpents was acquired by the plaintiff from his father, Solomon B. Harmon, on the 15th of March, 1885, and that the title to defendant's land also emanates from Solomon B. Harmon by title made to Charles F. Hollier, dated July 7, 1880, which was more than five years anterior to that under which the plaintiff claims.

The title of the defendant being the older title, the western boundary of the tract subsequently sold to Edward B. Harmon is the eastern limits of defendant's tract. And, in a survey of defendant's tract, the western limits should start at the road, not in the middle of it, as directed in a letter from the plaintiff to I. R. Guidry, which will be hereinafter mentioned.

The evidence shows that these two tracts of land were surveyed at the instance of the plaintiff while administrator of the estate of S. B. Harmon, his father, and the dividing line between them established.

The plaintiff is positive that he had his present tract and that of the defendant surveyed at that time by a surveyor called for the purpose. And the evidence shows that it was done more than 50 years before the present suit was filed. The competency of the surveyor and the correctness of the work then done is not questioned.

It must have been satisfactory, because the plaintiff and Charles F. Hollier accepted it unquestionably, and each possessed as owner up to the line in the presence of each other for more than 20 years, without any dispute as to the limits which the line represented. Therefore, if any error was made in the location of this line as then fixed and located, it cannot be corrected, because the prescription of 10 years urged by defendant in his answer bars any action having that purpose in view.

We are satisfied that there never would have been any dispute if a question of drainage had not interrupted friendly relations between plaintiff and defendant some 10 or 12 years ago. This drainage question is the gravamen of the present controversy.

The evidence pertinent to the establishment of the contiguous limits of the two estates on the ground and the subsequent erection and maintenance of a fence, marking the boundary line, is so submerged in the more than 400 pages of testimony concerning things done long subsequent thereto that the establishment of the line and the erection and maintenance of the boundary fence is difficult to follow through the record. But there is no doubt about it; the fact is not questioned by evidential showing.

A part of the land over which the boundary line and fence ran was low land. Some of the witnesses speak of this low place as a marais. The evidence shows that this low place or marais required drainage, and that the plaintiff, while residing on his estate, and Charles Hollier, while owner and residing on that of the defendant, each dug a ditch on their side of the fence, but the main ditch, the one that served to carry off the water, was on defendant's side, running parallel and close to the dividing fence line. There were low lands situated above the low land on plaintiff and defendant's land, which naturally drained through their land, particularly from the estate of Leon Tujague. The drainage ditch which served to carry off the water becoming obstructed, the water on the land of said Tujague was thereby impounded, and his farm suffered from the impeded drainage. But George Harmon, son of the plaintiff, occupying plaintiff's estate, acting in his behalf, took the position that the fence had been moved west, that the ditch was entirely on the land of his father, and forbade Tujague by threats of violence from opening the drain. Previous to the controversy between George Harmon and Tujague, we find no dispute between the plaintiff and Dufilho as to the location of the dividing line between them and that the boundary line between them had been definitely fixed and established in the presence of the adjoining owners for 20 years or more before that time. So the question for determination is the location of the old line.

The impeded drainage suffered by the lands above the plaintiff and defendant due to the obstructed condition of the ditch in question must have become a matter of public interest, because the evidence shows that the police jury interfered and employed and authorized Joseph Bordelon to go on the disputed premises and open up, widen, and deepen the ditch. Mr. Bordelon, acting on the authority of the police jury, entered on the premises without delay, and, without any active opposition from George Harmon, excavated what the witnesses say was a canal. The canal excavated by Bordelon followed the course of the old boundary line and fence as first constructed on the ground between the estates. After the excavation of the canal, the course and location of the old boundary

line on the ground and the place where had stood the boundary fence first constructed was marked by the canal; the ground on which same had stood was dug into the canal, but that did not destroy the boundary limits that had been marked on the ground and evidenced by the fence constructed on the line and maintained without dispute by the adjacent owners in the presence of each other for more than 10 years, before the commencement of any controversy on the subject.

About a year previous to the trial of this case in the lower court, the locality in which are comprised the estates of the plaintiff and defendant was organized into a drainage district. The officers of the drainage district determined to excavate a deeper and wider canal for drainage purposes on the line between the land of the plaintiff and that of the defendant, and caused their surveyor to make a survey of the two estates for the purpose. The survey was made, and it was found that, after the 70 arpents called for by plaintiff's title had been satisfied and the 7½ called for by that under which defendant claims, under their common author, there remained a strip of land about 18 feet wide in excess of the areas called for, sufficient for the canal, and the canal was excavated accordingly.

The plaintiff is dissatisfied, and claims that the canal is on his land. In a letter dated December 30, 1929, addressed to I. R. Guidry, plaintiff wrote, with reference to the location of the present drainage canal:

"And as to the ditch between me and Roger Dufilho, if any ditch is dug there, I want it understood that they will start in the middle of the public road and measure off Roger Dufilho's land and then dig the ditch. I am willing to give half the land for that ditch and they can put the dirt from that ditch on my land."

There is a large amount of evidence in the record as to the location of this road. It leads from the town of Washington to Opelousas, and is one of the oldest in the state. Some of the witnesses contend that, in the years ranging from '30 to '60, during which they have known and traveled it, it is not now in the same place that it was when they first knew it.

But we are satisfied that the general course of the road has not been substantially changed between the estate of the plaintiff and that of the defendant. It has been widened a little and straightened perhaps, but it remains substantially in the same place where it was on July 7, 1880, when the title from Solomon B. Harmon to Charles F. Hollier was passed.

The drainage canal recently excavated by the drainage district occupies the place where the Bordelon canal was dug and the place where the original fence was erected and where the original boundary line between these two estates was located on the ground.

We agree with the lower court that, the boundary limits of these two estates having been fixed and established on the ground between the parties, and the location evidenced by a fence on the line which stood there for more than 10 years in the presence of the contiguous owners, the plaintiff cannot now disregard the old line and have a new one established.

For these reasons, the judgment appealed from is affirmed, but, availing ourselves of the provisions of Act No. 229 of 1910, sec. 2, it is ordered that all the costs in this case incurred in the lower court and on appeal be taxed half against the plaintiff and appellant, and the other half against the defendant and appellee.