### BRUMFIELD v. CRYER.
### No. 1303.

Court of Appeal of Louisiana. First Circuit. May 8, 1934.

B. B. Purser and Mat. J. Allen, both of Amite, for appellant.

Ponder & Ponder, of Amite, for appellee.

LE BLANC, Judge.

Plaintiff, Uriah Brumfield, and Clarence Cryer, defendant, own adjoining tracts of land in Tangipahoa parish. The property of plaintiff is situated in section 37, and that of defendant in section 16.

Plaintiff alleges that many years ago in putting up his fence on the eastern line of his land, he erected it within his line and left outside of his fence sufficient land for a road or driveway; that Erasmus Cryer, who then owned the land now the property of defendant, in putting up his fence along this eastern line which divides the two tracts of land, encroached upon his land several feet at the north and south end.

He alleges that defendant, Clarence Cryer, now owner of the land previously owned by Erasmus Cryer, has committed a willful trespass by going on this strip of land left outside of his fence and cutting trees of the value of about $40; that he has also been damaged in the sum of $60 on account of this trespass and in the further amount of $100 in attorney's fees for the protection of his rights, making a total of $200 for which he is asking judgment against defendant.

Defendant, Clarence Cryer, filed an answer in which he denied every allegation of plaintiff's petition, with the exception of the generous admission that plaintiff is a resident of Tangipahoa parish.

After making these denials, defendant assumes the position of plaintiff in reconvention alleging that plaintiff, Uriah Brumfield, has moved his fence from year to year, eastward, thus encroaching on his property on which he has trespassed by cutting small trees and fence posts by which he has been damaged in the sum of $100, for loss of time, mental anguish, and attorney's fees in the amount of $250. Defendant, in addition to the foregoing averments, alleged that he had been in actual possession of 50 feet of land west of the section line between the two tracts for more than thirty years for which he should have judgment, but having entered a disclaimer of ownership thereto, this feature of defendant's reconventional demand has passed out of the case.

In his answer, defendant alleged that for a proper disposition of the issues, that a survey of the section line between sections 37 and 16 should be made; and, so praying, the district judge appointed T. A. Tycer, parish surveyor, to make the survey, who made the survey, filed two plats thereof with his procès verbal.

Thereafter, plaintiff filed a motion protesting against the recognition of the Tycer survey, claiming it was incorrect and in which he asked that the line between these two sections originally drawn in a survey made by J. B. Ogle forty years before be recognized as the true line; that the Tycer survey should be disregarded; and, in the alternative, another surveyor be authorized to make a survey.

In his original petition, to which we have hereinabove referred, plaintiff refers to this Ogle survey, evidently, as being the true line between the two sections which stands confirmed by his allegations and prayer in the

motion filed after Tycer had made his survey and in which plaintiff asked that the line originally run by Ogle be accepted as the correct line. It will be noticed that plaintiff does not, either in his original petition nor in his motion, claim to have acquired any land, by possession or otherwise, beyond the true line separating these adjacent tracts of land. Obviously, plaintiff is not claiming any land beyond his title in section 37, and he so testifies.

As defendant has abandoned any claim for land beyond the line dividing the two sections, the main issue before the court is as to the recognition of the true line between them and the solution of which will be determinative of the counterclaims by the litigants for damages resulting from the alleged trespasses and the cutting of timber along the disputed line.

In this court plaintiff has filed a motion pleading, as follows: "The prescription of Ten (10) Twenty (20) Thirty (30) and Forty (40) years as a bar to defendant's demand in reconvention."

This plea of prescription, it will be observed, is directed against the demand of defendant in reconvention. In this demand, the defendant originally claimed 50 feet of land west of the dividing line, and therefore to be taken from the land of the plaintiff.

It might be contended by plaintiff that as he possessed this strip for forty years, this possession constituted a bar to that part of defendant's reconventional demand, but defendant having, as before remarked, abandoned this claim for 50 feet beyond the section line, this has been eliminated from consideration, and hence there is no ground upon which this plea of prescription filed by plaintiff in this court could be sustained.

It will also be observed that plaintiff is asking that the survey made by Ogle, and to which he refers in his original petition, be recognized as fixing the "true line" between these two sections of land, and is not asking for any land, eastward, beyond that line. It is therefore clear that plaintiff is not claiming any land by prescription beyond the limits of his title. Such being the situation shown by the original petition of plaintiff, and likewise by his motion filed for the recognition of the Ogle survey, alleged by him to have established the true line, it follows that his plea of prescription filed in this court has no basis for its support in his pleadings or evidence.

The vital issue presented for decision is as to whether the line alleged by plaintiff to have been traced by Ogle or the line established by the survey of Tycer, should prevail; the other questions of damages and trespass being incidental or of secondary importance.

The trial judge having recognized the line fixed by the Tycer survey, we shall direct our attention first to a review of the judgment so rendered, and, secondly, to the counterclaims for damages and attorney's fees.

Counsel for plaintiff refers to the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, in support of his contentions. It was held in that case, affirming several prior decisions, that where the defendants and his predecessors in title possessed as far as a certain fence beyond their line, and on the land of plaintiff, that a suit by plaintiff to establish the boundary line was barred by the prescription of thirty years.

There is no demand by plaintiff in this case, either in his original petition nor in his motion filed to disregard the Tycer survey, in which he asserted any possession of land from defendant beyond the line claimed to have been established by the Ogle survey and which plaintiff characterized in his motion as being the true line; hence, the Opdenwyer Case and others of similar import upon which plaintiff relies have no application.

Counsel for plaintiff refers also to the case of Harmon v. Dufilho, 19 La. App. 222, 139 So. 530, at page 531, decided by this court.

In that case, as was stated in the syllabus, the boundary line had been fixed and established in the presence of the adjoining owners. It also appeared in that case that plaintiff and defendant possessed, as owners, up to the line established by the survey for more than twenty years. We therefore held if there were any error in the location of that line, it could not be corrected because any action to make such a correction was barred by the prescription of ten years.

In this case there is no proof whatsoever to show that a survey had been made in the presence of plaintiff and defendant, adjoining proprietors, or of their authors in title, but to the contrary, the evidence is, that the line in question was always a subject of dispute between the proprietors of these contiguous tracts.

■ Civil Code art. 853, to which counsel for plaintiff refers, says that where a surveyor has made an error in his measure, it can always be rectified, unless the part of the land on which the error was committed be acquired by an adverse possession of ten years.

This article, however, must be considered in connection with the preceding article 833, which says, that fixing the limits of land, ju-

dicially or extrajudicially, the surveyor shall be bound to make a procès verbal of his work or survey; and, also with the following articles 834, 835, etc., which prescribe the formalities the surveyor must observe. When there is a procès verbal showing a compliance with the requirements of the Civil Code for a survey, and possession according to the line thereby established, as was shown to be the situation in the case of Harmon v. Dufilho, decided by this court, an action for the correction of such a survey is prescribed in ten years.

To an act of sale from Joseph Redi to B. V. McMicheal, authors in title of plaintiff, is attached a map of survey declared in the deed to have been made by J. B. Ogle, surveyor. There is no procès verbal of the work of this surveyor showing the notices to adjacent proprietors, exhibition of titles, etc., required under the provisions of the several articles of the Civil Code on this subject.

It is claimed by plaintiff that there are markers between the two estates showing the line of survey made by Ogle about forty years ago. The evidence fails altogether to show with any certainty that there are visible signs of the line plaintiff claims was established by Ogle's survey.

■ Some of the witnesses said they had been told by others where this line had been traced. This was hearsay testimony and was not of a character to warrant its acceptance as proof of this disputed section line.

Mr. William Morgan, witness for plaintiff, testified that he had helped Mr. Ogle in making the survey, as chainman.

He was questioned as to where it is claimed a "staub" or marker had been placed by Mr. Ogle, but answered, he could not say it was the same "staub." The line in dispute runs north and south between the two sections, and of this there can be no question. Mr. Morgan testifies, however, that Mr. Ogle did not run a line north and south on the east side between plaintiff, Mr. Brumfield, and defendant, Mr. Cryer, that the run was east and west.

■ It is clear, with such evidence, that no proof was made to support the Ogle survey on which plaintiff relies, admitting that it could be taken as a basis for the prescription of ten years, appearing as it does on a plat without procès verbal showing a compliance by the surveyor with the formalities demanded under the provisions of the articles of the Civil Code, above cited.

If the line drawn by Mr. Ogle, appearing without proof of the legal requisites above referred to, had been positively recognized by the adjoining proprietors as the settled division line, with such proof, it could be held, that it was sufficient to support the plea of ten years' prescription, but without any evidence whatsoever of such character, the inescapable conclusion must be that there is no foundation for such a defense.

■ Mr. Tycer testifies that in making his survey he found an iron bar on his line, about 3 or 4 inches wide.

Mr. James McMichael, witness for defendant, aged seventy, testifies that a survey was made by Mr. Kerrigan, a surveyor from Hammond, of the line in question about forty-five years ago. He speaks of this iron pipe referred to by Mr. Tycer and says that there is a difference not over a foot between the lines drawn by Mr. Kerrigan and Mr. Tycer.

This testimony cannot, however, be accepted, as there is no plat to support this survey by Mr. Kerrigan, and no procès verbal showing the observance of the legal prerequisites.

■ Mr. Purser, counsel who conducted the trial for plaintiff, and now deceased, questioned Mr. Tycer quite at length on technical questions in reference to his charge of the incorrectness of his survey.

Mr. Tycer, it is shown, has been parish surveyor for Tangipahoa for many years, and, no doubt, was entirely competent to do the work intrusted to him in this case and made it clear by his answers that he had proceeded in his survey with professional care and that the inquiries to which he was subjected by counsel were purely theoretical and had no practical value.

It appears from the remarks of the district judge, shown by the record, that after appointing Mr. Tycer to make the survey, he allowed counsel for plaintiff the delay he requested for the employment by his client of any other surveyor of his selection.

Mr. Thomas, surveyor, was thereafter employed by plaintiff to make a survey of the controverted line and was called as a witness in the case, but had not brought the proces verbal of his work. The reason, it seems, for not delivering his papers over to his client, was because he had received only half of the pay claimed by him for his services.

Mr. Thomas proceeded to testify in the case, but counsel for plaintiff objected to any further examination of this witness because no procès verbal had been produced by him and the court sustained the objection, notwithstanding protest from counsel for defendant, that he had a right to cross-examine Mr. Thomas.

It is somewhat singular, and rather difficult to explain, why counsel for plaintiff should have objected to the testimony of his client's surveyor, unless he entertained some fear that his survey confirmed the correctness of the Tycer survey. It might have been otherwise but this is hard to believe.

We find no error in the judgment below in its recognition of the Tycer survey fixing the section line between the lands of plaintiff and defendant.

It is true that in one of the two maps filed by Mr. Tycer showing his survey, that a line appears thereon showing, as the testimony indicates, that a fence had been built overlapping the line established by him and a little to the eastward on the land of Cryer, defendant.

There is no demand, however, in the original petition filed by plaintiff nor in his motion for the recognition of the Ogle survey, asking for the acquisition of any strip of land eastward from his land and beyond the line established by Tycer, and as appears on one of his plats of survey.

It is clearly shown by a preponderance of the testimony that plaintiff, Mr. Brumfield, for a number of years would keep on from year to year to advance his fence eastward as he proceeded to clear up the land of its timber, but rather insignificant in size or value. As it was a yearly habit of Mr. Brumfield to thus remove his fence, it would be impossible to fix with any possible degree of certainty the number of years or period of time this fence appearing on the map had been standing where it was when Mr. Tycer made his survey; hence, the proof is totally wanting to show that plaintiff possessed any land beyond the line established by the Tycer survey, and on the land of defendant during a period of thirty years, as a basis for a claim of ownership thereto by prescription beyond his title, or to support a plea of ten or twenty years' prescription to urge in bar of defendant's right to the ownership of his land to the line so established and appearing on the Tycer plat of survey. Even if plaintiff had made proof of his possession during thirty years of a strip of land on defendant's property beyond the eastern limits of his title, he could not recover because he made no claim therefor in his pleadings, nor to sustain the prescription of ten or twenty years in bar against the right of defendant to fix the boundary line.

Having approved the Tycer survey, we shall now briefly review the claims and the counterclaims of these litigants for damages and attorney's fees.

Plaintiff, in his petition and which was not changed by his motion, alleged that defendant had cut trees west of the line established by the Ogle survey and therefore on a strip of land forming part of his property. As there is no evidence showing where the Ogle line was run, and wherever it was, as it could not be accepted as the true line, it follows that plaintiff has failed altogether to show title to such trees and cannot claim their value. Even if he were entitled to damages therefor, as the testimony of the plaintiff is, that three or four trees were cut by defendant, and as he has failed to prove their value, if they had any, this gives an additional reason to sustain a rejection of his demand for the recovery on this claim. His demand of $60 for trespass, and of $100 for expenses, as a necessary consequence, must also be denied.

One or two witnesses testified that they had seen plaintiff go on defendant's land and come from there with fence posts. The defendant said trees had been cut on his land but did not know who had removed them and fixed no value on these trees. There is no basis for a judgment on such a claim. It seems he was told also of some of his negroes being driven away from his premises by plaintiff, but personally had no knowledge of such a fact, and which is not proved by any other witness or witnesses. Such proof is neither convincing nor satisfactory to support a decree for damages.

Defendant is also claiming damages for humiliation, discomfort, etc., caused, as he alleges, by the acts of plaintiff, and refers to the case of Shelton v. Pentecost, 9 La. App. 155, 119 So. 375.

In that case, a forcible entry had been made by the employees of defendant into the home of plaintiff during his absence and his furniture had been removed, forcing plaintiff to seek shelter for himself and family elsewhere. Obviously, discomfort and humiliation were suffered by plaintiff in that case, resulting from this unwarrantable exercise of authority by defendant.

Here, no such discomfort or humiliation could possibly result from the acts of plaintiff in removing these trees. If he really suffered humiliation and mental anguish as a consequence of the conduct of plaintiff, he must be a man of extreme sensitiveness for which there can be no reparation in the way of damages under the rules of law governing in such cases; nor can he recover the attorney's fees claimed by him.

Finding no error in the judgment under review, it is therefore affirmed with cost.