174 So.2d 668 (1965)
Ranza Ann LaCALLE et al., Plaintiff and Appellant,
v.
Jercy CHAPMAN, Defendant and Appellee.
No. 1398.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1965.
Rehearing Denied May 19, 1965.
*669 Fruge & Foret, by Jack C. Fruge, Ville Platte, for plaintiff-appellant.
Fusilier, Pucheu & Soileau, by J. William Pucheu, Ville Platte, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiffs filed a petitory action alleging ownership of 3.9 acres of land possessed by defendant. Defendant admits possession and claims ownership under an informal boundary agreement made in 1948 and now established by prescription. After a trial, defendant's exception of prescription of 10 years, as provided by LSA-C.C. Article 853, was sustained and plaintiffs' suit dismissed. Plaintiffs appealed.
The essential issue in this case is one which has plagued our courts for many years. Does the 10 year prescriptive period provided by LSA-C.C. Article 853 apply only to boundaries fixed in accordance with the formal provisions of our Civil Code, or does it also apply where these formal requirements have not been met but where, instead, the parties have informally fixed a visible boundary to which they have consented, or given their active acquiescence, for a period of over 10 years?
There is little dispute as to the facts. In 1948 plaintiffs and defendant owned adjoining farms fronting on Bayou Cocodrie in Evangeline Parish. The boundary between these two tracts was a meandering line marked by a lane and an old fence. Both parties being dissatisfied with this meandering line, they employed a surveyor who in 1948 established a new straight line, running back from the bayou between the respective properties. As a result of straightening the meandering line, 3.9 acres (the property now in dispute) of the former LaCalle property is now on the Chapman side and 2.57 acres of the former Chapman property is on the LaCalle side, of the new line.
After the new line was established, plaintiffs and defendant each paid the surveyor one-half of his fee. A new lane was constructed on the new line and each party built a fence along the lane. This visible boundry, i. e., the lane and the fences on the new straight line, has existed since 1948 and the parties have possessed and cultivated the land up to the fence, but not beyond. This suit was filed in 1964.
Plaintiffs contend the 10 year prescriptive period provided by LSA-C.C. Article 853 is not applicable here because there was no compliance with the formal provisions of LSA-C.C. Article 833 et seq. requiring a licensed surveyor to make a proces verbal of his work in the presence of two witnesses, etc. Plaintiff quotes at length from the dissenting opinion of Judge Ellis in Owens v. T. Miller & Sons Building Supply Co., La.App., 101 So.2d 773 (1st Cir. 1958), which thoroughly reviews the jurisprudential history of Article *670 853 and cites the many cases which have held pro and con on the issue at hand. Judge Ellis thinks that a misinterpretation of certain obiter dictum in the early Supreme Court case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, has led to the subsequent jurisprudence erroneously applying Art. 853 to cases where the formalities of our Civil Code for fixing boundaries were not complied with.
With all due respect for Judge Ellis's reasoning, we are of the opinion our Supreme Court did settle the question in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957), although, as Judge Ellis says, the court's ruling there as to Article 853 was obiter dictum. On rehearing, the court decided the case on the basis of Article 852 and established the rule that mutual consent is not required to begin the 30 year prescriptive period provided by that article. However, the court, in very clear and unequivocal language, stated that the 10 year prescriptive period under Article 853 is applicable where there has been mutual consent or active acquiescence as to a visible boundary for over 10 years. The court also cited with approval one of the leading court of appeal cases so holding. We cannot construe this as an inadvertence and feel we are compelled to follow the language in the Sessum case, although it is admittedly obiter dictum. Particularly since this is the last expression of our Supreme Court on the subject. The court said:
"In the third instance, where there exists actual visible bounds which have been extra judicially placed incorrectly or fixed by the consent of or the active acquiescence of the adjacent land owners, an action in either case to rectify an alleged error in the location of the boundary line must be instituted within ten years under the penalty of being prescribed. LSA-C.C. Art. 853. The consent as to visible bounds made essential under said article to form the basis of ten year prescription must be more than a passive acceptance; it must be an affirmative recognition by both parties. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891.
"The mere erection of a fence or a hedge as a boundary, without the consent of the adjoining land owner, will not serve as the basis for ten year prescription, for this is said to be mere occupancy, and not adverse possession as required by LSA-C.C. Art. 853. Williams v. Bernstein [51 La.Ann. 115, 25 So. 411], supra."
The case of Blanchard v. Monrose, 125 So. 891 (Orleans App.1930), which is cited with approval by our Supreme Court in the Sessum case, said this:
"For a good many years the courts seemed rather undecided as to whether a boundary could be fixed otherwise than as provided in the Code. Later, however, it seems to have been well established that, if two adjacent property owners agree, even extrajudicially, that the boundary between their properties shall be a certain line and, as a result of that agreement, a fence is erected on that line and a period of 10 years is allowed to elapse, the right to bring an action to correct the boundary no longer exists. Opdenwyer v. Brown, supra; R.C.C. art. 853."
In 19 La.L.Rev. 307-308, Professor Joseph Dainow said this about the Sessum case:
"* * * after 130 years it cannot be said with certainty that all these code articles are clearly understood, especially the present Articles 852 and 853. These are troublesome because they both include the possibility of one proprietor acquiring some land from his neighbor by means of acquisitive prescription.
"The case of Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 went through *671 five hearings, including rehearings in the court of appeal and Supreme Court with reversals of the original opinion at each appellate level. The last word on Article 852 is as follows: Where an incorrect boundary has been evidenced by a visible marker (e. g., fence, in present case) and there has been uninterrupted possession up to that boundary for thirty years, then this boundary becomes the legal boundary. The proprietor who has possessed beyond his actual title description will, in these circumstances, acquire full legal title to the extra strip of land, regardless of the lack of consent of the adjacent owner to the establishment of the boundary in the first place. This interpretation of Article 852 leaves the ten-year prescription of Article 853 for the situation where the visible boundary was established incorrectly but with the consent or active acquiescence of both proprietors.
"This interpretation fits well into the pattern of Civil Code principles. If it sticks, it will be the marker to end the problem and let it rest in peace."
We are aware that our decision is contrary to Duplantis v. Cehan, La.App., 140 So.2d 409 (1st Cir. 1962); Roberts v. Dutton, La.App., 130 So.2d 428 (2nd Cir. 1961) and perhaps also Scott v. Blanton, La.App., 115 So.2d 658 (2nd Cir. 1960), all of which were decided after the Sessum case. But this apparent conflict in the decisions of our Courts of Appeal is a matter which addresses itself to our Supreme Court.
Counsel have cited the very recent case of Charrier v. DeVille, 168 So.2d 464 (3rd Cir. 1964). There plaintiff and defendant, without a surveyor, marked their boundary with blazed trees and built a fence on the line which they mutually agreed to and on which they placed detrimental reliance since 1944. Suit was filed 18 years later, in 1962, contending the fence was not the correct boundary line according to the descriptions contained in their respective deeds. Defendant resisted on the grounds that plaintiff was estopped to deny this long existing visible boundary. At issue was the admissibility of parole evidence to prove the oral agreement that the fence was the boundary. We sustained defendant's plea of estoppel citing several cases which allowed parole evidence in such a situation.
Although the Charrier case involved a plea of estoppel, and the present case an exception of prescription, the rationale of the two cases is somewhat similar. Both seek to give validity to a clearly marked visible boundary established by mutual consent or active acquiescence for many years and on which the parties have relied. The essentials of the plea of estoppel are not exactly the same as those for the exception of prescription, but the equitable considerations are very similar. However, strictly speaking, the Charrier case involved a plea of estoppel and is not applicable to this case involving an interpretation of LSA-C.C. Article 853.
We have no difficulty in concluding that the present case falls within the rule expressed in the above quotation from the Sessum case. The facts here clearly show that a visible boundary, i. e., a lane with a fence on each side, has been in existence for about 16 years. The facts are likewise clear that the parties mutually agreed and consented that this was the boundary line between their respective properties. This is evidenced by the fact that each paid the surveyor who fixed the line one-half of his fee; both then built fences on the line and maintained these fences ever since; and both have possessed up to, but not beyond, the new line since agreed on. There was both mutual consent and active acquiescence. This was not a situation where one party established a visible boundary and the other only passively acquiesced.
The plaintiffs, Mrs. LaCalle and her children, also make an argument that all of them did not actually consent to this *672 new line. The day the line was run in 1948, Willie LaCalle, a deceased son and brother of the plaintiffs, went with the defendant, Jercy Chapman, and the surveyor who established the line. However, the evidence shows clearly, and the trial judge held as a fact, that Willie LaCalle was acting for his mother and his brothers and sisters, all of whom knew the new line was being run, knew where it was established, and thereafter assisted in the construction and maintenance of the fence on the new line.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied FRUGE, and TATE, JJ., recused.