225 So.2d 615 (1969)
M. L. HARVEY et al., Plaintiffs-Appellants,
v.
Robert E. HAVARD et al., Defendants-Appellees.
No. 7730.
Court of Appeal of Louisiana, First Circuit.
July 2, 1969.
Rehearing Denied August 28, 1969.
*616 William E. Woodward, Clinton, for M. L. Harvey.
John M. Taylor, Baton Rouge, in pro per.
Kilbourne, Dart & Jackson, by Fred C. Jackson, St. Francisville, for Robert E. Havard.
D'Amico, Curet & Bush, by Louis Curet, Baton Rouge, for Dan DeLee.
Before LANDRY, SARTAIN and MARCUS, JJ.
MARCUS, Justice.
Plaintiffs M. L. Harvey and John M. Taylor are owners of a tract of land in West Feliciana Parish, and defendant Dan DeLee owns the property adjacent to them on the west side. In 1967 defendant Robert E. Havard, a resident of the State of Mississippi, was cutting timber under a contract with Dan DeLee. On February 27, 1967, the plaintiffs filed suit against Havard and seized his logging equipment under a writ of attachment, alleging that he had cut and removed trees from their tract.
On April 14, 1967, Havard filed an answer and a third party demand against Dan DeLee claiming that if he had in fact cut any trees belonging to the plaintiffs, it was only through the fault of DeLee for pointing out those trees as his own. DeLee, with his answer, brought a third party demand against the plaintiffs for damages for trespass in seizing Havard's equipment on DeLee's land.
The plaintiffs then filed a rule in which they asked that the court appoint a surveyor to locate the boundary between the tracts of the plaintiffs and DeLee so that the ownership of the trees cut by Havard could be determined. DeLee opposed plaintiffs' motion for appointment of a surveyor and alleged that, regardless of what a survey based on the record titles of the respective owners might show, DeLee and his ancestors in title had been in possession up to a certain fence line, which was located east of the place where the trees were cut, for a period in excess of thirty years. He argued that he had by this possession acquired the ownership of any property west of the fence line which might not be contained within the boundaries as set forth in his deed, and that there was therefore no need to appoint a surveyor *617 to determine the ownership of the trees which had been cut.
After the taking of evidence on the issue of prescription, the trial court found that the fence line had been established as a boundary by the consent of the adjoining land owners, that it had been recognized as the boundary for a period in excess of ten years, and that under the provisions of Article 853 of the Louisiana Civil Code it had thereby become established as the boundary. Accordingly, the motion to appoint a surveyor was denied, and the court found that all the trees had been cut west of the fence line and therefore on property owned by defendant DeLee. From a judgment denying plaintiffs' claims and awarding damages to Havard and DeLee, plaintiffs have taken this appeal. Havard and DeLee have answered the appeal, requesting increased damages.
It should be noted that this case is neither a petitory action nor a boundary action. It is a suit for damages, and the element of ownership of the property on which the trees were cut is simply one of the elements in plaintiffs' cause of action for damages. After careful consideration of the issues, this court is of the opinion that the trial court's finding that DeLee had acquired by prescription all property west of the fence line was erroneous. Accordingly, it will be necessary to remand this case for the taking of evidence on the question of ownership of the disputed area where the trees were cut, and for the awarding of damages consistent with the determination of ownership.
The Harvey and DeLee tracts were originally part of a large tract which was partitioned among the heirs of Mrs. Mary C. Lee. In the partition agreement, which was executed by the last of the co-owners to sign on April 20, 1937, the large tract was divided into three lots whose acreage and boundaries were described therein. Lot 2 was acquired in this partition agreement by Jones S. Lee, Mrs. Effie Wildblood Lee, and Robert B. Lee, authors in title of Dan DeLee. Lot 3 was received by Mrs. Emma Lee Cutrer and Mrs. Lucy Lee James and others, who were authors in title of M. L. Harvey and John M. Taylor. There was a rough sketch attached to the partition agreement, but this map does not appear to have been drawn by an engineer or a surveyor; the directions, bearings, and dimensions of the various lines are not given; and the sketch is unsigned. Moreover, the partition agreement makes reference to no natural or artificial boundary between Lots 2 and 3.
Because it found that the prescription of ten years was applicable, the lower court did not decide whether 30-year prescription would apply. As mentioned above, the agreement of partition was signed by the last of the heirs on April 20, 1937, and the record contains no evidence of any possession by any of the parties to the partition of particular portions of the property prior to that time. The original petition in this case was filed on February 27, 1967, and Havard's third party petition against DeLee was filed on April 14, 1967. Since these suits were filed less than 30 years after the effective date of partition, and since there is no evidence of any possession which could have commenced the running of prescription prior to that date, we find a legal interruption of prescription under Article 3518 of the Louisiana Civil Code prior to the earliest time that the prescription of 30 years could have possibly accrued.
Article 3478 of the Louisiana Civil Code provides that, "He who acquires an immovable in good faith and by just title prescribes for it in ten years." In this case neither DeLee nor his predecessors in title have deeds which purport to transfer more property than that described as Lot 2 in the partition agreement. There is clearly no title translative of ownership of all property west of the fence line. To the contrary, the deeds of DeLee and his ancestors in title describe the boundary between Lots 2 and 3 as originally set forth in the partition agreement, with no mention of natural or artificial boundary markers.
*618 Book III of the Louisiana Civil Code of 1870 contains Louisiana's basic property law, and Title V of that book is entitled "Of Fixing the Limits, and of Surveying of Land." It contains Article 853, which provides as follows:
If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.
The application of Article 853 has given some difficulty to the Louisiana courts, and a substantial volume of jurisprudence has resulted. See 40 Tulane Law Review 644 (1966). In City of New Orleans v. Shakspeare, 39 La.Ann. 1033, 3 So. 346, at page 349, our Supreme Court made the following observation about Article 853:
The article is found in the Code under the title, "Of fixing the limits and of surveying land," and it must be construed with reference to other articles under the same title, which treat of the same subject-matter. The pivotal article under that title (article 833) provides that, "whether the limits be fixed judicially or extrajudicially, it must be done by a sworn surveyor of the state, who shall be bound to make a proces-verbal of his work in the presence of two witnesses, called for the purpose, who shall sign the proces-verbal with him. * * *"
The Codal procedures for the fixing of a boundary are basically that the surveyor must notify the landowners (Article 834) so that they may appear and present their respective title papers in order that he may determine where to fix the boundary (Article 835); that he must not fix the permanent boundary markers until the survey is completed (Article 836); that he must desist and refer the parties to the court if any of them make any opposition prior to the completion of the work (Article 837); and, finally, that his conformity with these procedures must be described in a sworn proces verbal executed in the presence of two witnesses (Article 833). One court, in discussing ten year prescription under Article 853, seemed to compare the proces verbal of the surveyor to the requirement of a just title for ten year prescription under Article 3478:
The theory and policy of the law is that the survey by a sworn surveyor is an official act, and the proces verbal is written evidence of the proper location of land in accordance with the title papers of the parties, and is sufficient to translate the ownership of property, and serve as the basis of prescription. Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, 414 (1899).
The language of Article 833, which says,
Whether the limits be fixed judicially or extrajudicially, it must be done by a sworn surveyor of the State, who shall be bound to make a proces verbal of his work in the presence of two witnesses, called for the purpose, who shall sign the proces verbal with him * * *.
has let some courts to conclude that the ten year prescription of Article 853 is only applicable where the boundary has been fixed by a sworn surveyor in conformity with the procedures contained in the Civil Code. This was clearly the conclusion of the Supreme Court in Pan American Production Company v. Robichaux, 200 La. 666, 8 So. 2d 635 (1942). In that case there was an act of partition to which was attached a plat prepared by O. O. Gutekunst, a surveyor, showing the dividing line between the two tracts. In the presence of the adjacent land owners, the surveyor located the division line on the ground. After the line had been accepted as the boundary for more than 10 years, it was found that the line as marked on the ground was erroneous. *619 The court denied the applicability of Article 853 in the following language:
However, the establishment of the line was not done in accordance with Article 833 of the Code, which provides that: "Whether the limits be fixed judicially or extrajudicially, it must be done by a sworn surveyor of this State, who shall be bound to make a proces verbal of his work in the presence of two witnesses, called for the purpose, who shall sign the proces verbal with him, or mention shall be made therein of the causes which prevented them from signing."
Whether O. O. Gutekunst was a sworn surveyor of the state is not disclosed by the record. Presumably he was, but he made no proces verbal of his work in the presence of two witnesses called for the purpose. Therefore counsel is correct in his statement that this so-called dividing line was established by the consent of the parties. It was not made according to the requirements laid down by the code.
* * * * * *
"In order to sustain the plea of prescription of 10 years under article 853, it is necessary not only to show a possession of 10 years, but also that the possession had been held by boundaries fixed by a surveyor in accordance with articles 833 and consecutive articles of the Civil Code, requiring the work to be done by a sworn surveyor of the state, notice to the parties, examination by the surveyor of title papers, proces verbal of survey, etc."
In Owens v. T. Miller & Sons Building Supply Company, 101 So.2d 773 (La.App. 1st Cir. 1958), the late Judge Robert Ellis gave an extensive and scholarly review of the jurisprudence on the question of whether a formal survey is necessary in order for Article 853 to apply.
Judge Ellis' opinion, though it was a dissent on the merits of the case, was the majority expression of the court on the issue of prescription. His conclusion could not have been more clearly expressed:
I specifically hold that the prescription provided under LSA-C.C. Art. 853 is not applicable under the facts of this case, and is only applicable where all the formalities prescribed in the articles of our civil code dealing with the fixing of limits and with surveying of land are complied with. 101 So.2d 773, 794 [Emphasis added]
In what is perhaps the latest expression of this court on the issue, we stated in Duplantis v. Cehan, 140 So.2d 409, 413 (La. App. 1st Cir. 1962):
"The prescription provided in Article 853 LSA-C.C. is not applicable unless the boundary sought to be corrected has been previously fixed in compliance with the formalities prescribed by law including a survey as required by Article 833 LSA-C.C. Owens v. T. Miller & Sons Building Supply Company, La.App., 101 So.2d 773. In the instant case the boundary fixed by the agreement of November, 1945, was not predicated upon a survey but merely the agreement of the owners of the adjoining estates. The petition in the case at bar does not seek to correct or rectify an alleged error in a survey made incident to a prior boundary agreement, but rather attempts to re-establish a boundary once fixed but reputedly eradicated. It follows, therefore, that defendant's plea of ten years prescription is without merit and is hereby overruled."
Despite these clear expressions from this circuit, there is considerable jurisprudential authority for the application of Article 853 in situations where there has been no formal survey. It is apparent that this line of jurisprudence originated in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924), on which the lower court in its Reasons for Judgment heavily relied. In Opdenwyer the court, in sustaining a plea of thirty years prescription under Article 852, commented in dictum on Article 853 *620 that "if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed."
Since the Opdenwyer decision, there have been cases which have found Article 853 to be applicable in the absence of a formal survey. In the case of LaCalle v. Chapman, 174 So.2d 668 (La.App. 3d Cir. 1965), two adjoining land owners had employed a surveyor to establish the boundary between their properties. A survey was made, but the formal provisions of Article 833 et seq. were not followed. The two land owners each paid half of the surveyor's fee, a lane was constructed on the boundary line, and each owner built a fence along the lane. In a petitory action which was filed some sixteen years after the fixing of the boundary, the court found that Article 853 applied despite the failure of the surveyor to comply with the formalities contained in the Civil Code. This holding was expressly based upon some obiter dictum in the case of Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957).
The Sessum case, like the Opdenwyer case, involved the 30 year prescription of Article 852. The focus of the Supreme Court in Sessum was upon its conclusion that it is not necessary that the land owner against whom prescription is claimed consent to the adverse possession up to a certain boundary. In explaining its holding, the court distinguished Article 852 from Article 853, which applies where there has been a boundary fixed extrajudicially and by mutual consent (See Article 832). The language of the Sessum case which was quoted in LaCalle is as follows:
In the third instance, where there exists actual visible bounds which have been extra judicially placed incorrectly or fixed by the consent of or the active acquiescence of the adjacent land owners, an action in either case to rectify an alleged error in the location of the boundary line must be instituted within ten years under the penalty of being prescribed. LSA-C.C. Art. 853. The consent as to visible bounds made essential under said article to form the basis of ten year prescription must be more than a passive acceptance; it must be an affirmative recognition by both parties. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891.
The mere erection of a fence or a hedge as a boundary, without the consent of the adjoining land owner, will not serve as the basis for ten year prescription, for this is said to be mere occupancy, and not adverse possession as required by LSA-C.C. Art. 853. William v. Bernstein, supra.
There are additional considerations which lead us not to believe that the Supreme Court in the Sessum case intended to permit the application of Article 853 to boundaries fixed without any survey and by mere mutual consent. One such consideration is that the laws of prescription have the effect of divesting fixed rights in property, and should therefore be strictly construed. One reason for this strict construction is that the law governing ownership of immovable property affects not only the private rights of the parties themselves, but is also basic to the maintenance of public order. A strict reading of Article 853 compels the conclusion that that which is being prescribed is the right to challenge a boundary which has been fixed by a surveyor.
Furthermore, we do not feel that it would be sound judicial construction to interpret dictum in the Sessum case as overruling clear holdings of the Supreme Court in such cases as Pan American Production Company v. Robichaux, supra.
In the lower court DeLee based his case upon the theory that the prescription of Article 853 would apply to a boundary fixed by mutual consent, even in the absence of a survey, and recognized for a period in excess of ten years. Consequently, most of the testimony which he introduced was directed at proving that a barbed wire *621 fence was constructed shortly after the partition, and that it had been recognized since that time as the boundary between Lots 2 and 3. During the course of the trial, however, Ike Cutrer testified that shortly after the partition there had been a survey and that a barbed wire fence had been constructed along the boundary between Lots 2 and 3. He testified that the surveyor had marked the boundary by means of markings on trees, but stated that those markings were no longer visible. No evidence was introduced to show whether the surveyor was qualified, what procedures he employed in making his survey, or whether the proces verbal required by Article 833 was made. Nor was there any other evidence to corroborate the fact that a survey had been made or that a surveyor had placed the boundary along the old fence line discussed hereafter. In his Reasons for Judgment, the trial judge made only a very brief mention of Cutrer's testimony. It is clear that his application of Article 853 was not based on a finding that a survey had been made. He plainly expressed his opinion that the establishing of a boundary by mutual consent and the mutual recognition of the boundary as fixed would be sufficient for the ten year prescription. It is the finding of this court that the evidence is insufficient to support a finding that any survey was made.
The opening remarks of counsel for both parties indicate that at the time of the taking of the evidence in this case neither side believed that any survey had been made. The testimony of the witnesses was therefore directed at the issue of whether the barbed wire fence in question had been established as a boundary fence and thereafter recognized as such. The fence in existence at the time of the trial was constructed by DeLee in 1966. He contended, however, that the fence had been constructed along an old fence line which had served as a boundary since the property was partitioned. This old fence was apparently not standing at the time the new fence was constructed, and DeLee's testimony was largely aimed at proving that traces of the old fence, such as old posts and wire in trees, had been found along the line where the new fence was built. The plaintiffs, on the other hand, contend that if there ever was a fence along the line followed by DeLee, it was not a boundary fence, but was merely a field fence constructed for the protection of cultivation, the restraint of cattle and animals, etc. DeLee himself testified that the old fence was there in 1935 when he first visited the property. This would tend to weaken the contention that the fence was originally constructed as a boundary fence after the partition, which did not take place until 1937.
As might be expected in any case involving events which occurred nearly 30 years earlier, there were numerous contradictions and conflicts in the testimony concerning the old fence. One of DeLee's witnesses, Jeb Hollands, who at the time of the trial was 64 years old, testified that he had cut timber for previous owners of both Lots 2 and 3, and that each of these owners had instructed him to cut up to the fence line. He went on to say, however, that this old fence had been there when he was a boy and used to go on the property to play, long before the partition in 1937.
It is clear from the record that there were numerous field fences constructed over the years on the tracts here involved. Taking all these factors into consideration, we do not feel that the evidence justifies the conclusion that the old fence was constructed as a boundary fence or that it has been regarded over the years as the boundary by the owners of the tracts.
The case of Brumfield v. Cryer, 154 So. 662, was decided in this circuit in 1934 and bears a striking similarity to the instant case. It was also commenced as an action for damages for the cutting of trees on a disputed strip of land. The defendant brought a reconventional demand to which the plaintiff pleaded the prescription of ten years. The court, in confirming the need for a survey, held the prescription of Article *622 853 did not apply, in language as follows:
In this case there is no proof whatsoever to show that a survey had been made in the presence of plaintiff and defendant, adjoining proprietors, or of their authors in title, but to the contrary, the evidence is, that the line in question was always a subject of dispute between the proprietors of these contiguous tracts.
Civil Code art. 853, to which counsel for plaintiff refers, says that where a surveyor has made an error in his measure, it can always be rectified, unless the part of the land on which the error was committed be acquired by an adverse possession of ten years.
This article, however, must be considered in connection with the preceding article 833, which says, that fixing the limits of land, judicially or extrajudicially, the surveyor shall be bound to make a proces verbal of his work or survey; and, also with the following articles 834, 835, etc., which prescribe the formalities the surveyor must observe. When there is a proces verbal showing a compliance with the requirements of the Civil Code for a survey, and possession according to the line thereby established, as was shown to be the situation in the case of Harmon v. Dufilho, decided by this court, an action for the correction of such a survey is prescribed in ten years.
To an act of sale from Joseph Redi to B. V. McMichael, authors in title of plaintiff, is attached a map of survey declared in the deed to have been made by J. B. Ogle, surveyor. There is no proces verbal of the work of this surveyor showing the notices to adjacent proprietors, exhibition of titles, etc., required under the provisions of the several articles of the Civil Code on this subject.
It is claimed by plaintiff that there are markers between the two estates showing the line of survey made by Ogle about forty years ago. The evidence fails altogether to show with any certainty that there are visible signs of the line plaintiff claims was established by Ogle's survey.
Some of the witnesses said they had been told by others where this line had been traced. This was hearsay testimony and was not of a character to warrant its acceptance as proof of this disputed section line.
Mr. William Morgan, witness for plaintiff, testified that he had helped Mr. Ogle in making the survey, as chainman.
He was questioned as to where it is claimed a "staub" or marker had been placed by Mr. Ogle, but answered, he could not say it was the same "staub".
* * * * * *
Mr. James McMichael, witness for defendant, aged seventy, testifies that a survey was made by Mr. Kerrigan, a surveyor from Hammond, of the line in question about forty-five years ago. He speaks of this iron pipe referred to by Mr. Tycer and says that there is a difference not over a foot between the lines drawn by Mr. Kerrigan and Mr. Tycer.
This testimony cannot, however, be accepted, as there is no plat to support this survey by Mr. Kerrigan, and no proces verbal showing the observance of the legal prerequisites.
In this case we find the evidence inconclusive to prove either that there was a survey made or that the adjoining land owners consented to the old fence line as the boundary between the tracts. We are of the definite opinion that where there has been no survey made, the ten year prescription of Article 853 cannot apply. It is furthermore our appreciation that the jurisprudence established in this circuit is to the effect that a survey which forms the basis for prescription under Article 853 must comply with the formal requirements of the Civil Code, but because we find that there has been no proof of any survey, formal or informal, we find it unnecessary to decide in this case whether an informal *623 survey can be the basis of ten year prescription, as was held in LaCalle v. Chapman, supra.
For the foregoing reasons the judgment of the trial court is reversed and the case is remanded for the taking of evidence on the ownership of the disputed area where the trees were cut and for the awarding of damages consistent with the determination of ownership.
Reversed and Remanded.