274 So.2d 917 (1973)
M. L. HARVEY and John M. Taylor
v.
Robert E. HAVARD and Dan DeLee.
No. 9241.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
Rehearing Denied April 9, 1973.
Writ Granted May 24, 1973.
*918 John M. Taylor in pro. per.
William E. Woodward, Clinton, for M. L. Harvey.
Fred C. Jackson, St. Francisville, for Robert E. Havard.
Leon A. Picou, Jr. (Picou & Picou), St. Francisville, for all other parties.
Bryant Conway, Baker, for Dan DeLee.
Before BLANCHE, SARTAIN and WATSON, JJ.
WATSON, Judge.
This is the second time this matter has been before us on appeal. In Harvey v. Havard, 225 So.2d 615, this court reversed and remanded. The Louisiana Supreme Court declined to grant writs, 254 La. 855, 227 So.2d 595 (1969).
The litigation revolves around a dispute between owners of adjoining tracts of land in West Feliciana Parish, M. L. Harvey and John M. Taylor own a tract referred to as Lot 3 which is bordered on the west by a tract owned by Dan DeLee and known as Lot 2. Both Lot 2 and Lot 3 were part of a large tract which was partitioned among the heirs of Mrs. Mary C. Lee. The partition agreement, which was executed in 1937, divided the large tract into three parcels. DeLee's authors in title received Lot 2 in the partition while the authors in title of Harvey and Taylor received Lot 3. A rough plat was attached to the partition agreement to illustrate it, but the plat is unsigned and it makes no reference to a natural or artificial boundary between Lot 2 and Lot 3.
In late 1966 or early 1967, DeLee contracted with Robert E. Havard, a resident of Mississippi and a logging contractor, to cut certain timber and directed him to an area which, it later developed, was claimed by both DeLee and his adjacent owners, Harvey and Taylor. Havard commenced operations and was soon met by legal action on the part of Harvey and Taylor.

*919 I. Initial Proceedings in the Trial Court
Harvey and Taylor filed a petition against Havard alleging that the plaintiffs were the owners of a parcel of land in West Feliciana Parish; that Havard had entered upon and cut and removed from the plaintiffs' land certain trees; that Havard's equipment should be seized; and that damages should be awarded to plaintiffs. Havard filed a motion to dissolve the attachment, contending that it was wrongfully issued and that damages, as well as attorney fees, should be awarded to him. Havard also filed a third party demand against Dan DeLee who had contracted with him for the cutting and logging of timber on the property in question, any error in identification of the timber being attributed by Havard to DeLee.
Harvey and Taylor later amended their petition to damages of $750.
DeLee answered the third party petition admitting that he had contracted with Havard to log timber but claimed that he, DeLee, was the lawful owner of the land in question and that he authorized Havard only to cut timber from property owned by him. DeLee set forth the ownership of his tract of land, known as Lot 2, which adjoins property owned by plaintiffs, known as Lot 3. DeLee further alleged that his property was separated from Lot 3 by a fence. DeLee demanded damages from Harvey and Taylor for attorney fees, embarrassment, humiliation and mental anguish as well as trespass, all totalling the sum of $2,500. Harvey answered and reconvened against DeLee, claiming that DeLee had damaged plaintiffs by removing their trees to a value of $750 and had committed trespass on their property damaging them in the amount of $2,000 for attorney's fees, embarrassment, humiliation and mental anguish. John M. Taylor also filed an answer and reconventional demand making the same claims against DeLee as had Harvey.
Harvey and Taylor then filed a motion saying that they did not question the title of DeLee to his property, that DeLee did not deny the ownership by them of their property but that there existed a need for a surety to determine the location of the boundary. DeLee and Havard were called upon to show cause why the District Court should not appoint a surveyor and thereafter determine the rights of the parties.
Counsel for DeLee has argued strenuously that this is not a boundary action but is an action in trespass and for damages. He argues resourcefully that since this is not a boundary action, the trial court or this court cannot establish the boundary, and it would follow that the plaintiffs have failed to prove an essential element of their case; that is, their ownership of the land on which Havard was logging timber. If correct, and we do not find it to be, this would have the unfortunate result of restoring the situation to the same posture it was in prior to February 27, 1964, when the original petition was filed. Then the parties could start once again with a boundary action. We choose to believe that courts should interpret procedural questions without doing injustice to any party but in a manner to promote the prompt administration of justice and to settle rather than to perpetuate disputes among litigants.
DeLee answered this motion and urged the prescriptions of thirty years and ten years as a special pleading. He also denied the necessity for appointing a surveyor.
In the District Court the question of the appointment of a surveyor was heard and for written reasons assigned the court declined to designate a surveyor and sustained a plea of prescription of ten years filed on behalf of Dan DeLee.
At a subsequent hearing, but prior to the first appeal, the questions of damages and attorneys fees were tried and the trial court entered judgment in favor of Dan DeLee *920 and against Harvey and Taylor in the amount of $750 for trespass and $250 for mental anguish, humiliation and embarrassment. The trial court also entered judgment in favor of Havard and against Harvey and Taylor in the sum of $250 as damages for wrongful seizure. The demands for attorney fees were denied and Harvey and Taylor were cast for all costs.

II. The First Appeal
Following the adverse judgment in the trial court, Harvey and Taylor appealed to this court which reversed and remanded. The ruling of this court was as follows:
"In this case we find the evidence inconclusive to prove either that there was a survey made or that the adjoining land owners consented to the old fence line as the boundary between the tracts. We are of the definite opinion that where there has been no survey made, the ten year prescription of Article 853 cannot apply. It is furthermore our appreciation that the jurisprudence established in this circuit is to the effect that a survey which forms the basis for prescription under Article 853 must comply with the formal requirements of the Civil Code, but because we find that there has been no proof of any survey, formal or informal, we find it unnecessary to decide in this case whether an informal survey can be the basis of ten year prescription, as was held in LaCalle v. Chapman, supra.
"For the foregoing reasons the judgment of the trial court is reversed and the case is remanded for the taking of evidence on the ownership of the disputed area where the trees were cut and for the awarding of damages consistent with the determination of ownership." 225 So.2d 615 at 623.
This court also stated that:
"It should be noted that this case is neither a petitory action nor a boundary action." 225 So.2d 615 at 617.
However, in remanding with instructions to determine the ownership of the land on which the trees were cut, this court in effect interjected the elements of a boundary action into the case. When there is a dispute between adjoining owners as to ownership of their lands, it follows necessarily that the boundary must be established to decide the issue. The court was indicating that the litigation was not originated as a petitory or boundary action but as an action for damages, and it follows that "... ownership of the property on which the trees were cut is simply one of the elements in plaintiffs' cause of action for damages." 225 So.2d 615 at 617.
Plaintiffs had attempted to have a judicial survey of the property prior to the trial court's decision in favor of defendants based on prescription. This court, in effect, ordered the allowance of whatever procedures might be necessary to establish who owned the land.

III. Proceedings Subsequent to First Appeal
Following the remand the pleadings were supplemented by John M. Taylor's petition to call in warranty his vendors, George K. Cutrer, and others, claiming that he is entitled to reimbursement of the proportionate amount of the sale price if the acreage in which he has an interest is determined to be less than 162.90.
A motion was made by Taylor and an order was signed appointing McCain and Associates of Baton Rouge to survey all the boundaries of Lots 2 and 3.
Taylor's vendors, George K. Cutrer and others, filed exceptions of prematurity, non-joinder of a necessary party-plaintiff (identified as John Taylor in the exception but apparently referring to M. L. Harvey), and no cause and no right of action.
Dan DeLee filed an exception of no cause of action as well as an "objection to appointment of surveyor."
*921 Surveyor McCain completed his survey and filed his proces verbal with a plot of the survey on February 11, 1971.
DeLee obtained an extension of time in order to have another surveyor, William C. Horton, study the McCain survey and the boundary in question on his behalf.
Taylor moved for a show cause hearing as to why McCain's survey should not be approved and the boundaries of Lot 2 and Lot 3 fixed accordingly.
DeLee filed another pleading listing his objections to approval of McCain's survey.
Additionally, George K. Cutrer and others, who had been called in warranty by Taylor, their vendee, filed a pleading entitled "objections to approval of survey" which itemized five legal arguments against the McCain survey.
The matter was heard by the trial court first on April 23, 1971, and then on February 24, 1972. Only four witnesses were heard by the court. Ike Cutrer, who had testified at the initial hearing, reiterated his earlier testimony. The surveyor, McCain described his procedures to the court. The surveyor, Horton, testified on behalf of DeLee. Also testifying was Lathrop, a surveyor, whose earlier work McCain had used in making his survey.
The trial court held, after hearing the witnesses, that:
"... the parties to the partition agreement intended that the boundary between Lots 2 and 3 would be the old fence line. In effect this court finds that the term `north' on the sketch attached to the partition should be interpreted as meaning magnetic north. In other words, the sketch indicated that it was the intent of the parties to the partition that the fence running generally north and south was the dividing line and the gum tree and other signs indicated which fence running north and south divided the property. Mr. Horton convincingly presented this solution to the court, adding that this would resolve the dispute as to the approximately fourteen and a half acres. (February 24, 1972, Tr. pp. 51 et seq.)
"The testimony reflects that Dan DeLee replaced the old fence with a new one closely tracking the location of the original fence. Therefore this Court holds that the boundary between the DeLee tract and the Harvey-Taylor tract substantially follows the fence built by Dan DeLee." (Transcript, pages 440-441).
Accordingly, the trial court held that there was no liability on the part of DeLee to Harvey and Taylor.
DeLee was held to be entitled to $100 nominal damages from Harvey and Taylor for trespass, which represents a reduction from the total damages of $1000 awarded prior to the first appeal. Havard was awarded $250 damages for wrongful seizure.

IV. The Current Appeal
Harvey and Taylor have appealed, urging that the trial court erred in finding the new fence line, constructed by DeLee to be the boundary and in awarding damages to DeLee had Havard. DeLee has answered the appeal, complaining of the reduction in the amount of damages awarded to him.
While the history of this litigation is lengthy and while there have been a multiplicity of pleadings, the issue to be decided on this appeal is rather narrow: whether the trial court should have established the boundary as located by the McCain survey instead of concluding that the fence line reconstructed by DeLee represented the boundary.
The choice was between a carefully surveyed and established boundary line located pursuant to a court-appointment and following all of the procedures required by law as opposed to an old fence line which the record reveals to be largely a matter of conjecture and speculation. The old fence *922 line was rejected, in effect, by this Court on the first appeal. The only additional evidence presented after remand was a repetition of the testimony of the witness, Ike Cutrer, and the presentation of an hypothesis by the surveyor, Horton, that the party who drew the original sketch attached to the partition agreement used magnetic north instead of true north, which is conceded by all of the expert surveyors to be contrary to proper surveying practices.
The procedures followed by McCain, the court-appointed surveyor, conform to the requirements of Title V of the Louisiana Civil Code, "Of Fixing the Limits, and of Surveying of Lands", and particularly to Arts. 833 et seq. We are impressed with the account given by McCain as a witness in describing how he undertook to survey the boundary line between Lots 2 and 3. It is significant that when closely considered, there is only the slightest disagreement between the conclusions of McCain and those of Horton, the surveyor who was engaged by DeLee. The two surveyors differed by only two or three inches as to the actual division line.
It must be remembered that McCain was the surveyor appointed by the court and that certain legal consequences result from his status and his proper following of legal procedures.
As early as 1847, the Louisiana Supreme Court has recognized a presumption of correctness in favor of surveys made pursuant to court order and complying with all formalities required by law. In Jewell v. Porche, 2 La.Ann. 148 (1847), the law was said to be:
"The presumption of law is in favor of the correctness of those surveys, when they are proved by the officer who made them; but that presumption will of course yield to contrary proof, when such proof is made.... Surveyors are the experts of land suits, and we view their plans as the reports of experts are viewed. They cannot make the survey without calling upon the parties for their titles; the parties, when called upon, may, if they think proper, attend the survey, and, when it is returned into court, make opposition to it, and falsify it by any competent evidence." At 149.
The presumption was followed in the later case of Anding v. Smith, La.App., 189 So. 362, where the court observed:
"The appointed surveyor was the only expert testifying in the case. The presumption is that his survey, made under the court's supervision and in accordance with all formalities required by law, and proved by him, is correct." At 364.
In support of their arguments against the propriety of accepting the McCain survey, the defendants cite the case of Loeblich v. Garnier, La.App., 113 So.2d 95, for the proposition that one who has been in possession of property for over one year has a cause of action to prevent a disturbance of that possession and the trespasser may not excuse his violation of a generally recognized boundary by attempting to establish another boundary. This, of course, is a sound proposition of law but the facts of the Loeblich case are quite different from the facts before us. In Loeblich there was a finding that:
"Corporeal possession over the property was exercised by Sandifer, plaintiff Loeblich's predecessor in title, when in 1951 (after a survey verified the recognized boundaries of the tract) he cut all the timber off the tract he owned up to clearly recognizable limits; thus evidencing such external signs of possession as to indicate clearly his exclusive control and occupancy over the property. (Citing cases). All witnesses agree that plaintiffs' tract was entirely cutover land, its limits clearly distinguishable from the adjacent heavily timbered tracts."
In the case presently before us the evidence as to possession is quite nebulous *923 and confusing, certainly not clearly indicating DeLee's exclusive control and occupancy of the property. Therefore, we do not find the principle of law of Loeblich v. Garnier, supra, to be applicable.
It is difficult to argue with the proposition that in determining whether a trespass has been committed, the boundary must be located with certainty. There is ample authority to determine boundary in trespass cases. In both Brumfield v. Cryer, La.App., 154 So. 662, and McDaniels v. Miller, La.App., 136 So.2d 763, this court has approved and, indeed, has found essential the fixing of a boundary in a trespass action.
We find that the trial court erred in failing to approve and homologate the survey as reported by the court-appointed surveyor, McCain, and erred in finding the new fence line constructed by DeLee to be the boundary.

V. Damages
Having concluded that the McCain survey should have been approved by the trial court, we must consider the question of damages in the context of the boundary established. Neither party presented evidence as to the location of the trees cut or the alleged trespasses with relation to the boundary established by the McCain survey. Thus, the claim of Harvey and Taylor against DeLee must fail as must the claim of DeLee against Harvey and Taylor. The party demanding damages for cutting of trees, trespass, humiliation and mental anguish must establish his claim with certainty, and where he fails, no award will be made. Brumfield v. Cryer, supra.
The situation as to Havard is different. There is no question that Harvey and Taylor had Havard's equipment seized and tied up for a period of time, although it must be noted in their favor that it was eventually released. Since we have found that the plaintiffs, Harvey and Taylor, failed to demonstrate that there was a trespass violating the boundary found by McCain, it follows that they have failed to demonstrate the propriety of seizing Havard's equipment. The trial court awarded Havard $250 in damages and we find no manifest error in his judgment.

VI. Call in Warranty
John M. Taylor does not urge his call in warranty on appeal unless the determination of the boundary by the trial court is upheld. In view of our decision on the boundary issue, the call in warranty is dismissed.

VII. Costs
The general rule is that the cost of a survey in a boundary dispute is to be divided equally between the owners of the estates involved. LSA-C.C. Art. 663; Arnaud v. Barber, La.App., 225 So.2d 656. We think that this rule is applicable to the survey and is appropriate for the entire litigation here. All costs are taxed half against Dan DeLee and half against John M. Taylor and M. L. Harvey.
It is ordered, for the reasons assigned, that the survey by John I. McCain of February 11, 1971, be recognized as fixing the boundary between the tract owned by Dan DeLee and the tract owned in indivision by John M. Taylor and M. L. Harvey.
It is ordered that Robert E. Havard have judgment against John M. Taylor and M. L. Harvey, jointly and in solido, in the amount of $250 from date of judicial demand, until paid.
It is ordered that all other demands be dismissed.
It is ordered that all costs are taxed half against Dan DeLee and half against John M. Taylor and M. L. Harvey.
Reversed in part and affirmed in part.