225 So.2d 656 (1969)
Ralph ARNAUD et al., Plaintiffs-Appellees,
v.
Isadore BARBER et al., Defendants-Appellants.
No. 2747.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1969.
Rehearing Denied August 26, 1969.
*657 John Barkley Knight, and R. P. Boyd, Jr., Harrisonburg, for defendants-appellants.
Smith, Taliaferro & Griffing, by George Griffing, Jonesville, for plaintiffs-appellees.
Before SAVOY, HOOD and MILLER, JJ.
HOOD, Judge.
This is an action to establish the boundary between two adjacent tracts of land in Catahoula Parish, Louisiana. Plaintiffs are the undivided owners of the westernmost tract, and defendants are the owners of the east tract. Judgment on the merits was rendered by the trial court fixing the boundary substantially in accordance with the claims made by plaintiffs. Defendants have appealed.
The principal issue presented is: Did the trial court err in fixing the boundary according to a quantity call in the description, rather than according to the visible markers which were shown by the evidence?
By deed dated February 3, 1897, C. W. Henderson conveyed to Jefferson Barber a *658 tract of land in Catahoula Parish, Louisiana, described as follows:
"* * * all that certain tract or parcel of land being known as the back field of the portion known as the Locust Grove Plantation being (100) one hundred acres more or less and situated in the Parish of Catahoula and State of Louisiana and bounded as follows on the west by lands sold to Tom Cooper and J. S. Collins by the vendor on the East by a lake known as the foot log lake on the North by lands of Mrs. Dora Cook on the south by lands of Mrs. J. T. Netherville or heirs and Hart and Joseph Brothers."
The defendants in this suit are the heirs of Jefferson Barber, deceased, and as such they are the undivided owners of the above described property. All parties agree that plaintiffs own the property which lies west of and immediately adjacent to that tract.
The north, south and east boundaries of the above described property have been located, and there is no dispute as to those lines. There is a dispute, however, as to the location of the west boundary of the above described property. A decision as to the location of the west line of that property will have the effect of determining the boundary between the tract of land owned by plaintiffs and that owned by defendants.
The deed from Henderson to Barber described the property therein conveyed as being "the back field of the portion known as the Locust Grove Plantation." The boundaries of the Locust Grove Plantation, or of "the back field" of that plantation, are not known, however, and they cannot be fixed with any degree of certainty. That part of the description which refers to such a plantation, therefore, is of no assistance in determining the west line of defendants' property, or in locating the boundary between the land owned by plaintiffs and that owned by defendants.
The description also recites that the property conveyed is bounded "on the west by lands sold to Tom Cooper and J. S. Collins by the vendor." No property in that area has ever been sold to Cooper and Collins, however, and thus that part of the description which refers to such a sale is of no value of assistance in locating the west line of defendants' land.
Plaintiffs contend that the call in the description which reads, "being (100) one hundred acres more or less," is the only call which can be relied upon in locating and fixing the west line of defendants' land. They point out that the north, south and east boundaries have been located with exactness, and that there is no call in the description which sets out the location of the west line except the one which gives the quantity of land being conveyed. They argue that the west line thus should be fixed according to this quantity call, and that the line should be located at such a distance from the east boundary that defendants will have exactly 100 acres.
Defendants contend that the boundary between the two adjacent tracts of land should be fixed along the trace of a very old fence, which fence line runs in a northeasterly-southwesterly direction in that vicinity. The trace of this old fence is a considerable distance west of the line which plaintiffs claim should be the true boundary, and if this old fence line should be held to be the west boundary of defendants' tract, then their property will contain substantially more than the 100 acres, more or less, which is called for in the deed. Defendants contend that this old fence line has been established by surveys as being the boundary between the two tracts, and that defendants are entitled to judgment decreeing the boundary to be along that line. They also allege that they, or their ancestors in title, have possessed the property lying east of the old fence line since 1897, and they specially plead acquisitive prescription of ten, twenty and thirty years.
The evidence produced at the trial consisted largely of the testimony of two licensed surveyors, the testimony of several persons who had been familiar with both tracts of land for many years, and some *659 plats of surveys. One of these plats, prepared in 1942 by E. E. Scott, a civil engineer, purports to be a plat of a survey of the Barber tract. It shows an irregular line running northeast and southwest at the extreme western edge of the tract which was surveyed, and this line is marked "Trace of very old fence." If this irregular line is determined to be the western boundary of the Barber tract, then according to the Scott survey that tract would contain 158.60 acres.
Another plat, prepared in 1947 by John W. Baker, a surveyor, shows what appears to be the same irregular line running northeast and southwest at the extreme western edge of this property, and that line is identified on that plat as, "West line of Barber Estate pointed out by Richard Barber, surveyed by E. E. Scott." The same plat also shows another fence line, running north and south and extending from the north to the south lines of the Barber tract. This second fence line is located a considerable distance east of the very old fence line which was shown in the Scott survey. The second, or easternmost, fence shown on the Baker plat is identified on that plat as the "West line of Barber Estate pointed out by A. L. Henderson." The plat also shows that that portion of the tract surveyed which is located east of the "Henderson fence line" contains 86.60 acres, and that portion which lies west of the Henderson fence line, between that line and the Barber fence line, comprises 70.60 acres.
James H. Tooke, a licensed surveyor who was appointed by the court to survey the premises, felt that the traces of the old fence line, being the westernmost line shown on the Scott and Baker plats, were insufficient to enable anyone to follow or locate that line without additional information. He also found no evidence indicating that the land on the east side of that fence had been occupied. In view of these findings, and the fact that the quantity call in the original description of the land would not have permitted the west line to be placed nearly as far west as the westernmost line shown on both of the above mentioned plats, Mr. Tooke concluded that the west boundary of defendants' tract should be fixed on a line running north and south, parallel to the section line and a sufficient distance from the east boundary to give defendants exactly 100 acres.
Glen C. Baker, a licensed surveyor who testified in behalf of defendants, surveyed these premises in 1947. He was associated at that time with John W. Baker, who prepared the above described plat of survey relating to that property the same year. Although the plat which was prepared by Baker at that time does not purport to show the true west boundary of defendants' land, Mr. Glen C. Baker testified that in his opinion the boundary should be fixed along the westernmost line shown on that plat.
The evidence convinces us that most of the land located between the two fence lines shown on the Baker plat is low woodland, described by some witnesses as being a slough, and that it is not suitable for cultivation. We think a fence existed at one time substantially along the line shown as the westernmost fence line in the Scott and Baker plats. That fence ceased to exist many years ago, however, and at least since 1942 only traces of such a fence could be found, these traces consisting of small pieces of barbed wire embedded into the trunks of some trees along that line. The evidence does not show who built the fence originally, or who maintained it while it was in existence.
We are convinced that the owners of the two estates involved in this litigation have never recognized the westernmost fence as being the boundary between their respective tracts of land. On the contrary, the evidence establishes that there has been a dispute between the owners of these two tracts for many years as to the location of the boundary line between them. The surveys which were made in 1942 and in 1947 were made in attempts to settle this dispute. The plat of the survey made by Baker in 1947 shows on its face that there was a dispute as to the boundary at that time, since each owner pointed out a different *660 boundary to the surveyor. One witness who lived on the property many years ago testified that there was a dispute between the owners as to the location of the boundary line as early as 1927, and that "there has always been a dispute as to where this line should be." The trial judge obviously concluded that there was never an express or implied agreement between the owners as to the location of the boundary between these two estates, and that the surveys of 1942 and of 1947 did not establish such a boundary. We agree with that conclusion.
The trial judge also determined that the quantity call should control, and that the boundary between the two estates should be located along the line which was recommended by Mr. Tooke, the court-appointed surveyor. The decree which was rendered by the trial court described the boundary between these estates as follows:
"Commence at the northwest corner of Section 1, Township 6 North, Range 6 East, Catahoula Parish, Louisiana, which point is marked by a brass nail in a six inch clay pipe filled with concrete. From that point, run south 653.4 feet (9.9 chains) then run south 89 44' East 372.3 feet TO THE POINT OF COMMENCEMENT OF THE DIVIDING LINE DIVIDING THE PROPERTIES IN DISPUTE; thence run south 1788.0 feet to the south line of the properties in dispute."
Plaintiffs are entitled to compel defendants to fix the limits of their respective properties, since these two contiguous estates have never been separated and have never had the boundaries determined. LSA-C.C. art. 823.
The order of importance of, or the preference which should be given to, the various calls which may be included in a description are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. The controlling consideration in any case, however, is the intention of the party or parties. Sagrera v. Mouton, 180 So.2d 775 (La.App. 3d Cir. 1965); Dufrene v. Bernstein, 190 La. 66, 181 So. 859 (1938).
A call in a description which specifies the acreage or quantity of the land therein being described is the weakest of all calls, and it must yield to all other calls which give monuments, distances or courses. When the description does not contain a call of monuments, distances or courses, however, or where all of these preferred calls fail for some reason, then the call which specifies only acreage or quantity must be given effect and it must control. LSA-C.C. art. 849; Meyer v. Comegys, 147 La. 851, 86 So. 307 (1920); Sagrera v. Mouton, supra.
In Meyer v. Comegys, supra, our Supreme Court appropriately stated:
"* * * Monuments of the character mentioned are allowed to control, for the reason that in cases where the line is uncertain, but approximately in a given location, these guides are more permanent and possess less of the possibilities of error incident to courses, distances, and area; but when the basis for the rule ceases, as where, admittedly, the monument does not meet the calls of the deeds, then it cannot control, and must give way to the weaker guides. There being no courses or distances given in this case, the acreage or quantity prevails, and both parties receive thereby all that their deeds call for."
The description in the 1897 deed from Henderson to Jefferson Barber contains no calls as to distances or courses. The only calls in the description which can be of any value or importance in locating the west boundary of that property are: (1) The call relating to the Locust Grove Plantation; (2) the call relating to a sale to Cooper and Collins; and (3) a quantity call showing that the property contains 100 acres more or less. If the first two such calls, relating to the plantation and to a prior sale of other property, can be considered as calls of monuments, then both *661 of such calls fail completely and must be disregarded for the reasons already mentioned. This leaves the quantity call as the only remaining call which can be relied upon in fixing the west boundary of defendants' property.
Although a quantity call is weak and must yield to other types of calls, we conclude that it is the only call in the description involved here which can be relied upon, and that the specification in the description that the property conveyed contains 100 acres, more or less, is controlling. There was no error on the part of the trial court, therefore, in relying upon that quantity call, and in locating the west boundary of defendants' property on a line running north and south, parallel to the section line, a sufficient distance from the east boundary to give defendants exactly 100 acres.
We find no merit to defendants' alternate pleas of prescription. Although there is some conflict in the testimony, we think the evidence establishes that defendants have not possessed the property in dispute here as owners. As we have already pointed out, the land lying between the westernmost fence line, as shown on the Scott and Baker surveys, and the true boundary as determined by the trial court, is lowland suitable only for grazing, hunting and for some timber. There is a fence on the east side of the disputed tract, and years ago there may have been a fence on the west side of it. The evidence indicates, however, that this disputed area has never been enclosed completely, and it always has been used by both parties as open range land and for the cutting of some timber or firewood. We are convinced that there has been no possession by defendants sufficient to support any of their alternate pleas of prescription acquirendi causa, and that such pleas must be rejected.
The judgment appealed from condemns defendants to pay all costs of this suit, including the fee of the surveyor. Defendants contend that the cost should be shared by the parties, since there was and is a valid dispute between them as to the location of the boundary suit may be assessed to the cept by judicial determination.
As a general rule the costs of survey incurred in a boundary action are to be divided between the owners of the adjoining estates. LSA-C.C. art. 663. Where the defendant resists the demand to fix a common boundary and compels a suit, however, or where he is arbitrary or capricious in refusing to amicably settle that dispute as to the boundary, then the whole costs of the boundary suit may be assessed to the defendant. Miley v. Walker, 159 So.2d 38 (La.App. 1st Cir. 1963).
In the instant suit plaintiffs have attempted to amicably settle this boundary controversy. On one occasion they offered to give defendants 120 acres of land, that being more than the quantity called for in their deed, and this offer was refused by defendants. It thus became necessary for this boundary suit to be filed. After the suit was instituted defendants resisted the demand to fix a common boundary, and they did not attend the survey which was made by the court-appointed surveyor. Some of their differences may have been resolved if they had attended the survey and had provided the surveyor with the information which they had relative to the boundary between these estates. We think defendants' failure or refusal to consider an amicable settlement of this boundary dispute, and their actions in resisting the demand to fix a common boundary, justify the conclusion reached by the trial court that they should be condemned to pay all costs of this suit, including the fee of the surveyor.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.