STOKER, Judge.
This action was brought seeking a judicial establishment of boundaries[1] between properties owned by the plaintiffs, James A. Truly, Harry L. Truly, Jr., and Mrs. Leora Truly, and the defendant, Woodard-Walker Lumber Company, Inc. Defendant appeals the judgment insofar as defendant was cast with all costs, arguing that the $3,472.50 surveyor’s fee should be divided equally between the parties. We affirm.
The sole issue before us on appeal is whether or not the trial judge properly taxed all the costs of the survey against the defendant-appellant.
*1331 FACTS
The location and placement of the boundary line is. not in dispute at this point and is not before us on appeal. For some time the plaintiffs, primarily through their attorney, attempted to persuade the defendant to agree to an extrajudicial fixing of the boundary in question. Plaintiffs ultimately concluded that the defendant would not agree to an out-of-court settlement of the boundary.. They then filed this boundary action. The boundary line which was the subject of the dispute was the south line of plaintiffs’ property and the north line of the defendant’s property. Plaintiffs describe their property in the petition as
A certain tract of land in Natchitoches Parish, Louisiana, containing 160 acres, more or less, being the North Half of the North Half of Section 15, Township 11 North, Range 8, Louisiana Meridian.
The defendant corporation owns the south half of the north half of Section 15 of the township and range indicated above. Thus, the property of defendant Woodard-Walker Lumber Company, Inc., lies south of the property of plaintiffs, the Trulys. The record reflects that on July 26, 1976, one of the plaintiffs, Doctor James A. Truly, wrote a representative of the defendant (apparently Mr. R. E. “Jack” Woodard) to advise him of the boundary problem and to suggest an amicable settlement. The letter appears to be a follow-up of previous oral discussions. In 1958, a boundary dispute arose between the then owner of the Truly tract, Henry L. Truly, Sr., and the owners of the tract to the north, J. W. Loftin and Jack Woods. That boundary was fixed in a boundary action in which a registered surveyor, A. J. Brouillette, was the court-appointed surveyor. .Brouillette’s line was established some 222 feet south of a line which had been earlier established by another surveyor, Henry M. Hyams. Therefore, the north line of the Truly property was established judicially on the basis of Brouillette’s survey some 222 feet south of what had been thought to be the north line of the Truly property. This resulted in what was referred to as a “short section”. Subsequent events reveal that the section was, perhaps, not actually short. However, both the plaintiffs and defendant assumed that it was because of their knowledge of the Hyams’ survey results and the subsequent different location established by Brouillette.
The defendant corporation, Woodard-Walker Lumber Company, Inc., acquired its property from D. Crawford Young in 1962. Young acquired it from B. S. Adams, who had acquired the property from Henry L. Truly, Sr., in 1940. Truly had originally owned the entire north one half of Section 15, and no boundary had ever been established between the south half he sold and the north half he retained.
When the defendant, Woodard-Walker Lumber Company, purchased from Young, the latter indicated a line of painted trees as representing the northern boundary of the Young tract. Defendants believed this painted line had been fixed based on the Hyams’ survey. Defendants later had the 'line repainted. After the elder TruJy’s death, the Trulys discovered the painted line. By reference to other landmarks, the Trulys concluded that the painted tree line was some 222 feet inside their southern property line and assumed it was based on the Hyams’ line. In his opening letter to the defendant, Dr. Truly suggested that, if the section was short, the best solution was for each landowner to take a proportionate share of the loss. The defendant countered by suggesting that all owners within Section 15 located south of defendant be contacted, and their attitude toward adjustment of the lines be determined. This and other facets of amicable settlement were the subject of much correspondence between defendant and plaintiffs’ attorney until July 5, 1977. On that date plaintiffs’ attorney informed defendant that, as no progress had been made toward an extrajudicial boundary settlement, the matter would have to be taken to court. This suit resulted.
TRIAL COURT ACTION
The court appointed A. J. Brouillette to make the survey. Defendant objected on the ground that, because Brouillette had established the north line of plaintiffs’ property in the earlier boundary action *1332 mentioned above, he would be bound by it. Defendant felt that a surveyor uncommitted to the Brouillette line should be appointed in order to assure that the validity of the Brouillette line would be considered. The trial court acceded to defendant’s objection and registered surveyor Barrett Gremillion was appointed in Brouillette’s stead. To defendant’s disappointment, Gremillion accepted the Brouillette line as the north . line of plaintiffs’ property. Nevertheless, through Gremillion’s survey, both parties appear to have received equal quantities of land, and the amount of each is approximately what is contained in a regular or ideal government survey (20 by 80 chains). Under such, a survey each would have east and west boundaries of 20 chains (1,320 feet); Gremillion’s survey shows western boundaries of 19.715 chains for each tract. The eastern boundary is shown for the Truly tract only, and that is shown as 19.94. The eastern boundary of the defendant is not shown, but, by scaling the plat, it appears to be the same.
The plat of survey filed by Gremillion (P-1) shows that the painted tree line relied on by the defendant, and the boundary line fixed by Gremillion, began at the exact same point on the east boundary of Section 15 and ran westerly inside the Truly property so as to juncture on the western boundary of Section 15 at a point 119.46 feet (1.81 chains) north of the boundary established by Gremillion. Gremillion’s survey (P-1) is reproduced as an exhibit and made a part of this opinion. As may be seen, a long, narrow, triangular-shaped parcel, or strip, lies north of the boundary line established by Gremillion and south of the painted tree line. It measures 80.70 chains (5,362.2 feet) on the two long sides and has a base (west side) measuring 1.81 chains (119.46 feet). Therefore, this triangular strip, rather than a strip 222 feet wide running across the property the width of Section 15 (5,362.2 feet), fell to plaintiffs. This strip lay entirely below the painted tree line, which defendant maintained was the boundary line. Neither plaintiffs nor defendant lost entirely, at least insofar as their original assumptions were concerned. The total area in question (north one half of Section 15) was not as “short” as had been assumed. Although the boundary line shifted southward almost 120 feet on the west end from the painted tree line, both parties received almost all the acreage they could expect in a full quarter section.
On a rule to show cause why the survey of Gremillion should not be homologated and the line established by him should not be established by judgment of the court as the boundary line, the defendant filed an exception on the ground that the surveyor failed to comply with LSA-C.C.P. art. 3692.[2] Primarily, the defendant argued that the survey failed to show the contentions of the parties and merely established a boundary line. Tr. 18-20. The exception was overruled. Tr. 22. A judgment approving and homologating the survey of Barrett Gremillion was signed on February 6, 1979. Tr. 46.
The case was tried on its merits on May 29, 1979. At this trial the defendant did not challenge the Gremillion survey or the boundary line which it fixed. The defendant entered a stipulation consenting to the fixing of the line as indicated by Gremillion, with the reservation that it had been opposed.[3] The sole issue tried on the merits *1333 was whether the costs should be assessed equally between the parties or assessed entirely to defendant because of its failure to agree to an extrajudicial boundary fixing. Plaintiffs took the position that, with the consent of defendant to the fixing of the boundary line, nothing was left to be tried except the assessment of costs. They objected to any evidence relating to events leading up to the bringing of the petition to have the boundary fixed. Defendant contended it should be permitted to delve into the history of events in order to show that it was justified in requiring that the line be judicially fixed. The court allowed defendant’s evidence.
SURVEY REQUIREMENTS OF LSA-C.C.P. Art. 3692
Woodard-Walker Lumber Company, Inc., defendant, strenuously opposed the homolo-gation of the survey of Barrett Gremillion. In its brief defendant repeats its complaint, pointing out that LSA-C.C.P. art. 3692, as it read formerly, (and as it applies to this case) required, among other things, that the surveyor “[should] inspect the lands in question and to make plans showing the respective contentions of the parties.” [Emphasis supplied.] The survey does not specifically show what each party contends the boundary should be. However, the survey does show the yellow painted line which defendant contends should be the line. Defendant also knew where the north line of the Truly tract had been fixed in the earlier boundary action. Taking the north line of the Truly tract as a starting line, it would have been a simple task to approximate where the Tru-lys contended the south line should be. Insofar as the Gremillion survey is concerned, we may take it that the actual boundary line fixed by Gremillion is the line for which the Trulys contended.
For the foregoing reasons there is no substance to defendant’s complaint in this regard. The trial court and this court, as well as the parties, may look at the plat of survey and see thereon the precise contentions of the plaintiffs and defendants. Therefore, there is no merit in defendant’s complaint concerning the surveyor’s failure to literally comply with LSA-C.C.P. art. 3692.
ASSIGNMENT OF THE COSTS
We have discussed the above issue because the issue was argued in defendant’s brief. However, both appellant and appel-lees agree that the sole issue is whether defendant-appellant should be assessed with all of the costs.
The applicable statutory provision relative to assessment of costs is contained in Article 663 of the Louisiana Civil Code which was replaced by Article 790[4] which became effective January 1, 1978. Article 663 provided:
Art. 663. He may compel his neighbors to fix and mark the limits of their estates which are contiguous to his.
The limits are established, and boundary stones or posts placed at their joint expense.
According to the Official Comments under new Article 790, no change in the law was intended. Comment (b) reads:
(b) According to well settled Louisiana jurisprudence, costs incurred in fixing boundaries are divided equally between the adjoining proprietors by application of Article 663 of the Louisiana Civil Code of 1870 only when there is an amicable settlement. In case of litigation, costs are apportioned equitably. Thus, the costs may be borne by a defendant who unjustifiably refused to cooperate with *1334 plaintiff toward an amicable settlement: Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir. 1974); Arnaud v. Barber, 225 So.2d 656 (La.App. 3d Cir. 1969); Miley v. Walker, 159 So.2d 38 (La.App. 1st Cir. 1964); Lirette v. Duplantis, 65 So.2d 639 (La.App. 1st Cir. 1953). The costs may also be borne by an unsuccessful plaintiff: Savoie v. Savoy, 262 So.2d 582 (La.App. 3d Cir. 1972); or they may be equally divided between the parties: Girard v. Donlon, 127 So.2d 761 (La.App. 3d Cir. 1961); Sharpless v. Adkins, 22 So.2d 692 (La.App. 2d Cir. 1945). Cf. 2 Toullier, Droit civil francais 50 (1833).
Although new Article 790 provides that the assessment of costs in a boundary action, that is, when the boundary is judicially fixed, is taxed in accordance with the rules of the Code of Civil Procedure, liberal jurisprudential rules existed under old Article 663 which applies in this case. The court stated the status-of the jurisprudence in Young v. Morvant, 358 So.2d 1292 (La.App. 3rd Cir. 1978) in a per curiam opinion:
Plaintiff-appellant seeks a rehearing from only that part of this court’s judgment which affirmed the trial court’s assessment of all court costs originally incurred in the trial court, including the cost of the court-appointed surveyor, to plaintiff-appellant. In support of his application appellant urges that under R.C.C. Article 663, and the numerous cases which have interpreted its provisions, the cost of the court-appointed surveyor is to be divided equally between the parties litigant.
We agree that generally cost of a survey in a boundary dispute is to be divided equally between the owners of the estates involved. Harvey v. Havard, 274 So.2d 917 (La.App. 1st Cir. 1973) affirmed, 287 So.2d 780 (La.1973). This general rule is not however, without exception, the provisions of the cited article being inapplicable under certain circumstances. Lirette v. Duplantis, 65 So.2d 639 (La.App. 1st Cir. 1953); Arnaud v. Barber, 225 So.2d 656 (La.App. 3rd Cir. 1969, writ refused, 254 La. 854, 227 So.2d 594; William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977).
In the instant case we concluded that the totality of the circumstances present warranted the trial court’s assessment of all court costs originally incurred in the trial court, including the cost of the court appointed surveyor, to plaintiff-appellant. We remain firm in this conclusion. Accordingly, appellants application for a rehearing is denied.
LSA-C.C.P. art. 1920 authorizes the trial court to make an equitable assessment of costs.
The trial court gave no reasons for its judgment assessing all the costs to defendant-appellant. From the record we conclude that some equity exists in favor of defendant-appellant, but the totality of circumstances favors plaintiffs and supports the discretion exercised by the trial court.
Dr. Truly’s opening letter of July 25, 1976, was cordial and suggested a mutual sharing of any loss of acreage. On November 24, 1976, plaintiffs’ counsel addressed a letter to defendant of similar import. Throughout the exchange of correspondence in the record, Woodard-Walker never, at any time, agreed to share any loss of acreage or survey costs. As much was admitted by R. E. Woodard, Jr., who testified for defendant. Tr. 77-81. Several times plaintiffs’ attorney proposed that surveyor A. J. Brouillette be hired to survey a line at the mutual expense of the parties. An estimate of approximately $3,000 was given by Brouillette as the probable cost of the survey.
Defendant wished to bring in all owners in the southern part of Section 15 and, also, apparently wished to challenge the north line of the section established by Brouil-lette. Plaintiffs gave defendant additional time to contact the owners and cooperated in furnishing the names of some of the owners of property to the south of defendant. However, plaintiffs pointed out the difficulty of obtaining the interest and consent of those owners. If Section 15 was deficient in acreage, prescription of titles would likely establish property lines which could not be disturbed. Therefore, it might prove impossible to shift some lines southward. In any event, defendant seemed to *1335 make no progress in enlisting the aid of the owners to the south of the Woodard-Walker property.
On July 12, 1977, plaintiffs offered to contribute 55 feet across their southern boundary to settle the controversy. Plaintiffs proposed a preliminary survey. On March 29, 1977, plaintiffs’ attorney advised defendant that he had examined the original government plats and was of the opinion that Section 15 was not a short section, and that there was no 222-foot discrepancy between plaintiffs’ and defendant’s boundary line. Under the circumstances, plaintiffs’ attorney advised that plaintiffs were left no alternative but to file suit.
On April 28, 1977, plaintiffs’ attorney advised defendant that Brouillette did not believe there was any shortage in the section. Again a survey was suggested to establish a boundary extrajudicially with the costs to be shared equally. On May 10, 1977, defendant’s counsel wrote plaintiffs’ counsel, in part, as follows:
As Jack Woodard has previously written to you, the primary concern of the company is that it get the acreage that it bought from Mr. Young. Mr. Hyams, as you know, showed the line of that acreage to be 220 feet further north than Mr. Brouillette, your present Parish surveyor, says that it is. If our property owners to the south are agreeable to a resurvey and a written boundary agreement, that will simplify matters. If they are not, then to avoid the loss of some 27Vz acres, we will have no choice except to a judicial fixing. Because of the expense involved, we would hope to avoid such an action.
The correspondence reflects that plaintiffs allowed defendants quite some time to negotiate with, the property owners to the south. On July 5, 1977, plaintiffs, through their counsel, advised defendant that they were unwilling to wait any longer and were preparing to petition for a boundary action. The correspondence over the affair lasted from July 25,1976, until July 5, 1977. Suit was filed on July 15, 1977.
Contrary to what the correspondence in the record reflects, the testimony of R. W. Woodard, Jr., indicates an attitude of setting tight on what defendant claimed. The following appears in the transcript on cross-examination (Tr. 79):
Q. Well, now listen. Isn’t it a fact that you were concerned that it was going to disturb your southern boundary?
A. No, sir. No, sir, I wasn’t disturbed at all.
Q. It’s your testimony that you were not concerned about it disturbing the southern boundary of your property?
A. I knew that it probably would affect it but I was not concerned. As I told Doctor Truly — I think he would verify this — we wanted only what was ours. We didn’t know where it was. We thought we had it properly located.
Defendant-appellant urges that a bona fide dispute existed relative to the boundary line. It contends that the Hyams survey would place the line 222 feet north of a line based on Brouillette’s earlier survey which was made in connection with a survey to establish the Truly’s north line. Defendant-appellant had apparently hoped to have the Hyams’ survey validated over the Brouillette survey. Under the circumstances the defendant-appellant argues that it was in good faith and had the right to have the boundary judicially determined without suffering penalty through being charged with all the costs. As has been noted, the Gremillion survey allotted defendant practically all it was entitled to.
It is our impression that defendant-appellant kept plaintiffs at bay for a considerable length of time without making any real move to resolve the conflict. It intended to stand without concession on the painted line which it then considered to be the line. Defendant brought no boundary action of its own. It is evident that the controversy would never have been settled had plaintiffs not brought the action. The trial court was within- its discretionary bounds. We will not disturb its ruling.

AFFIRMED.

*1336 [[Image here]]

. This suit was filed July 15, 1977. Therefore, this litigation is governed by the articles of the Louisiana Civil Code in effect prior to January 1, 1978, relating to boundary actions. Title V of Book II of the Louisiana Civil Code was repealed by Act 170 of the Louisiana Legislature of 1977 which became effective January 1, 1978. The substance of the law of boundaries is now contained in Title VI of Book II of the Civil Code, Articles 784 through 796.

. As of the time of the 'filing of plaintiff’s petition LSA-C.C.P. art. 3692 read as follows:
The court shall appoint a surveyor to inspect the lands in question and to make plans showing the respective contentions of the parties.
The article was amended by Act 169 of the 1977 Session of the Louisiana Supreme Legislature, effective January, 1978, to read as follows:
The court may appoint a surveyor to inspect the lands and to make plans in accordance with the prevailing standards and practices of his profession indicating the respective contentions of the parties.

. The stipulation and reservation appears on page 57 of the volume of the transcript containing the transcript of testimony. It reads:
MR. CAMPBELL: If the court please, Mr. Arthur made the statement that we offer no opposition. While we have consented to the fixing of the line by, [sic] according to the Gremillion survey. But it was opposed[,] and until the line was established in the Gremil-lion survey, we had no idea where it was. And once we’ve seen that survey line, as established by him, we have consented that it *1333 be fixed in accordance with that survey. But we do not want the record to show that we offer no opposition to this. We want to show that that’s purely by consent on the part of the defendant.
THE COURT: Let that statement by Mr. Campbell be made a part of the record.

. LSA-C.C. art. 790 which replaces LSA-C.C. art. 663 effective January 1, 1978, (Act 169 of 1977) provides:
Article 790. Costs
When the boundary is fixed extrajudicially costs are divided equally between the adjoining owners in the absence of contrary agreement. When the boundary is fixed judicially court costs are taxed in accordance with the rules of the- Code of Civil Procedure. Expenses of litigation not taxed as court costs are borne by the person who has incurred them.